# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ayatollah Orafan, Hussein Ishmael Razi-Bey, Anthony Cook, Antwon Dennis, and Willis Amaker, | No. 95-CV-318 (PAM/GJD)<br>No. 00-CV-2022 (PAM/GJD) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Glenn S. Goord, Commissioner of the New York State Department of Correctional Services; Ismail Abdur Rahim, Ministerial Program Coordinator ("MPC") for Islamic Affairs; Warith Deen Umar, former MPC for Islamic Affairs; Muhammad Salih Ahmed, former acting MPC for Islamic Affairs; Mark Leonard, Director of Ministerial and Family Services; John R. LoConte, former Director of Ministerial and Family Services; Cyril Rashid, Chaplain at Shawangunk Correctional Facility ("C.F."), Osameh Al-Wahaidy, former Chaplain at Auburn C.F.; Sami Khalifah, former Chaplain at Auburn C.F.; and Abdulkadir Elmi, Chaplain at Great Meadow C.F.; | |
| Defendants. | |

This matter is before the Court[1] on Motions for Summary Judgment filed by Defendants

Goord, Leonard, Rashid, Al-Wahaidy, Ahmed, LoConte, Khalifah, and Elmi.

---

[1]   Pursuant to an inter-circuit assignment under 28 U.S.C. § 294(d), the undersigned is the Judge of record in this case.

Defendant Umar joined in the Motions.   For the reasons that follow, the Motions are granted in part and denied in part.

## BACKGROUND

### A.     The Parties

Plaintiffs are Shiite Muslims who are currently incarcerated by the New York State Department of Correctional Services ("DOCS").   Plaintiffs Cook, Dennis, and Razi-Bey are incarcerated at Auburn Correctional Facility.   Plaintiff Amaker is incarcerated at Woodbourne Correctional Facility, and Plaintiff Orafan is incarcerated at Eastern Correctional Facility. Defendants are various prison officials: the DOCS Commissioner, the current and former Ministerial Program Coordinators for Islamic Affairs, the current and former Directors of Ministerial and Family Services, and facility chaplains.[2]   Plaintiffs have sued all Defendants in their individual and official capacities, except for Umar and LoConte, who are sued only in their individual capacities.

### B.     The Claims

Plaintiffs are suing for alleged violations of their rights to freely practice Shiite Islam and to be free from the establishment of Sunni Islam.   Specifically, Plaintiffs' primary claim is that Defendants violated their rights in not providing them with a separate Jumah service led

---

[2]   Defendant Ismail Abdur Rahim died during the pendency of this action, and Plaintiffs have not made a motion for substitution.   Thus, Defendant Rahim is dismissed as a party under Federal Rule of Civil Procedure 25(a)(1).   In addition, two other Defendants have been dismissed pursuant to the parties' stipulations: Mamoun El-Hassan and Ibrahim Ezghair.

by a Shiite prayer leader.[3]   Plaintiffs contend that the unified Muslim service provided by DOCS does not meet their spiritual needs because they cannot receive proper religious guidance from Sunni Muslims.   Plaintiffs also assert that Defendants have engaged in acts of hostility and discrimination against them based on their religion.   They further claim that DOCS has established Sunni Islam as the official version of Islam and that DOCS officials have systematically discriminated against Shiite beliefs and practices in favor of Sunni Islam.

As pled in the Consolidated Complaint, Plaintiffs' specific claims are (1) violation of the free exercise of religion as provided by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, against all Defendants; (2) violation of the free exercise of religion under the First and Fourteenth Amendments, against all Defendants; (3) conspiracy to deny civil rights under 42 U.S.C. § 1985(3) and the First and Fourteenth Amendments, against Defendants Umar, Ahmed, Rashid, Al-Wahaidy, Khalifah, and Elmi; (4) establishment of religion as prohibited by the First and Fourteenth Amendments, against all Defendants; (5) violation of equal protection as provided by the Fourteenth Amendment, against all Defendants; (6) violation of the right to free exercise of religion as provided by New York Constitution Art. I, § 3, against all Defendants; and (7) violation of the right to free exercise of religion as provided by N.Y. Correction Law § 610, and DOCS Directives 4200, 4202, and 4750, against all Defendants.   Plaintiffs seek declaratory, injunctive, and monetary relief for all claims.

**C.      Procedural History**

---

[3]  A Jumah service is a Friday prayer service.

This case began as two separate cases.  The first, Civil No. 95-318, was filed in 1995, and alleged overt discrimination against Shiite inmates by various prison officials and challenged DOCS's religious policies.  The second, Civil No. 00-2022, was filed in 2000 after RLUIPA was enacted and challenged the same policies and practices under the new law.

There are several previous rulings in the two cases which constitute important law of the case, and to which this Court will adhere.  On February 12, 2003, in Civil No. 00-2022, Judge Kahn dismissed Plaintiffs' claims for monetary relief against all Defendants in their official capacities.  After Plaintiffs filed an Amended Complaint, Judge Kahn again dismissed Plaintiffs' claims for monetary relief against all Defendants in their official capacities, as well as monetary damages sought for conduct predating the enactment of RLUIPA.

On August 20, 2003, this Court addressed a Motion for Summary Judgment filed by current Defendants Rashid, Goord, Umar, Khalifah, and Elmi in Civil No. 95-318.  The Court ruled that (1) Plaintiffs had exhausted their remedies under the Prison Litigation Reform Act; (2) the above-named Defendants were entitled to qualified immunity on Plaintiffs' claims arising from the denial of separate worship; (3) as a mere supervisor, Defendant Goord was entitled to qualified immunity on Plaintiffs' claim of deprivation of the reasonable opportunity to practice their religion based on discriminatory conduct and comments; (4) Defendants Umar, Rashid, Khalifah, and Elmi were not entitled to qualified immunity on Plaintiff's free exercise of religion claim based on an alleged deprivation of the reasonable opportunity to practice their religion because of discriminatory conduct and comments; and (5) Plaintiffs raised genuine issues of material fact whether alleged discrimination by Defendants Umar,

4

Rashid, Khalifah, and Elmi burdened Plaintiffs' free exercise of religion.   On November 20, 2003, the Court clarified its earlier ruling and explicitly reinstated Plaintiffs' claims for declaratory and injunctive relief against Defendant Goord.

The two actions were consolidated on April 20, 2004, and Plaintiffs filed their Consolidated Complaint on May 19, 2004. On November 3, 2004, this Court was permanently assigned to the case.

**D.       The Motions for Summary Judgment**

Defendants contest the merits of all of Plaintiffs' claims.   They also seek summary judgment on the grounds that RLUIPA is unconstitutional under the Establishment Clause and the Tenth Amendment and exceeds Congress's power under the Spending Clause and the Commerce Clause.   Defendants assert various defenses such as failure to exhaust administrative remedies, qualified immunity, and Eleventh Amendment immunity.

**DISCUSSION**

**A.       Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   As the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).   The non-moving party may not rest on mere allegations or denials in response to the motion but must set forth specific facts in the

record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The Court must view the evidence and reasonable inferences drawn from the evidence in the light most favorable to the non-moving party.  Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992).

**B.     Exhaustion of Administrative Remedies**

Defendants argue that some Plaintiffs have not exhausted their administrative remedies. The Court addressed this issue in its Order of August 18, 2003, and found that Plaintiffs have complied with the exhaustion requirement.  This is the law of the case, and Defendants have offered no reason to reconsider this decision.  Accordingly, summary judgment is not appropriate on this basis.

**C.     Free Exercise of Religion under RLUIPA**

1.     Qualified Immunity

Defendants contend they are entitled to qualified immunity on Plaintiff's RLUIPA claim.  The Court previously held in this case that Defendants Rashid, Goord, Umar, Khalifah, and Elmi were entitled to qualified immunity on the right-to-worship-separately claim brought under the First and Fourteenth Amendments, but only as to the request for monetary relief.  The Court will apply this law of the case to the RLUIPA right-to-worship-separately claim and to all Defendants because Plaintiffs have not established that the right of Shiite Muslims to worship separately from Sunni Muslims is a clearly established right.  As Defendants concede, however, qualified immunity is not available for declaratory or injunctive relief.  Because

Plaintiffs have also requested declaratory and injunctive relief for their RLUIPA claim, the Court must proceed to the merits.

       2.      <u>Merits of the RLUIPA Claim</u>

RLUIPA provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). In applying the test, a court must give deference to the prison officials, who are responsible for creating and establishing policies and maintaining order and security. <u>See</u> <u>Jolly v. Coughlin</u>, 76 F.3d 468, 475-76 (2d Cir. 1996) (citations omitted) (applying identical  test under the Religious Freedom Restoration Act). There is no dispute that the Jumah service requested by Plaintiffs is a religious exercise,[4] but Plaintiffs must show that Defendants substantially burdened this religious exercise.

       a.      <u>Substantial Burden</u>

In determining whether a person's religious beliefs are substantially burdened, the Court must determine whether the belief is central or important to the individual's religious practice. <u>Ford v. McGinnis</u>, 352 F.3d 582, 593-94 (2d Cir. 2003). Although Plaintiffs have submitted evidence from religious experts that a Jumah service for Shiite Muslims must be led by a Shiite prayer leader, the burden is to be measured by an individual's specific beliefs, not general ecclesiastical doctrine. <u>See</u> <u>id.</u> at 594.

---

    [4]   As the Plaintiffs have limited their RLUIPA claim to the Jumah service (Pl. Mem. Opp'n Defs.' Mot. Summ. J. at 18-31), the Court has done likewise.

First, by their own admission, Plaintiffs Orafan and Amaker attend the congregate Jumah service, which undermines the importance of a separate Shiite Jumah service to them. Second, even if Plaintiffs do not attend the congregate Jumah service, they may satisfy their prayer requirement by individually praying the Zohr prayer in their cells.   Plaintiff Razi-Bey testified that Shiite law permits a follower to pray the Zohr prayer when there is not a Shiite prayer leader, and that the Zohr prayer is an acceptable accommodation.   Plaintiff Cook testified that if a Jumah service cannot be formed, he will pray the Zohr prayer by himself. Additionally, Plaintiff Cook has led Shiite Jumah services at the Shawangunk Correctional Facility, unbeknownst to DOCS officials, to satisfy the prayer requirement.   Plaintiff Orafan testified that if a Jumah service cannot be congregated, he prays the shaura prayer.  When asked about an alternative to the Jumah prayer, Plaintiff Amaker testified he says the Ashya prayer. By their own statements, praying the Zohr prayer is an acceptable alternative to a separate Jumah service for Plaintiffs Orafan, Cook, Razi-Bey, and Amaker.[5]

Third, it is significant that Plaintiffs have not established the requisite number of Shiite inmates who want to and would attend a solely Shiite Jumah service at their respective facilities.   Plaintiffs, their experts, and religious authorities have all stated that there must be at least five participants to form a valid Shiite Jumah.   Notably, Plaintiffs' evidence also

---

[5]   Possibly realizing the damage of their testimony, Plaintiffs offered subsequent declarations in which they denied the validity of the Zohr prayer.  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969).   The Court therefore disregards the subsequent declarations.

establishes that Jumah is not even obligatory unless there are seven participants.   Considering that Plaintiffs have not shown that a valid Jumah can even be formed at any of Plaintiffs' facilities, the Court cannot conclude that the failure to provide a separate service constitutes a substantial burden.  Any burden is caused by the mandates of the Shiite doctrine.

Considering the availability of the unified service, the option of performing the Zohr prayer, and the numerical requirement for a valid Jumah service, the Court finds that Defendants have not substantially burdened Plaintiff's religious exercise.   Accordingly, summary judgment is granted on the RLUIPA claim.

b.   Compelling Government Interest and Least Restrictive Means

As an alternative grounds for summary judgment, the Court finds that Defendants have satisfied their burden to show that a unified Jumah service is the least restrictive means of achieving compelling government interests.   The compelling government interests asserted are security concerns, fiscal and staffing limitations, and space constraints.   Maintaining security and preserving order are compelling government interests.  See Cutter v. Wilkinson, 125 S. Ct. 2113, 2123 & n.11, 2124 n.13 (2005).  Fiscal, staffing, and space  considerations are a part of maintaining security and preserving order.   See Marria v. Broaddus, No. 97 Civ. 8297 (NRB), 2004 WL 1724984, at *2 (S.D.N.Y. July 30, 2004).

Defendants have shown that providing a separate Jumah service would "seriously impact security staffing and the costs thereof."   (LeClaire Aff. ¶ 16.)   With one exception, Plaintiffs are housed in maximum security facilities.  DOCS would have to increase the number of staff personnel, who would be required to escort inmates to and from the service as well as monitor

the service.   Increasing security staffing would result in an increase in work hours and overtime, which would constitute a significant payroll expense in a difficult fiscal climate. Identifying a separate space for the service would "pose a very difficult problem," especially because the two prayer services would need to occur at the same time, therefore possibly requiring an additional Mosque at each facility.   (Id. ¶¶ 20, 21.)   Using space not currently dedicated to religious programming is not an option.   Not only is such space unavailable, but it also conflicts with DOCS's policy of holding religious services only in areas designated for religious purposes.   Specifically with respect to the Auburn facility, "the addition of any program on Friday afternoon . . . would present an unacceptable security risk for inmates and officers."   (Graham Aff. ¶ 11.)   The areas identified by Plaintiffs – the old school building, auditorium, and old law library – are already beyond capacity or are otherwise unavailable because of construction.   As to security, Defendants refer to a time when Muslim prisoners were divided into two groups: a generic faith and the American Muslim Mission.   Inmates in the two programs competed for members, and violence ensued on many occasions.   To combat the divisiveness, DOCS unified the programs, and Muslim inmates have since peacefully coexisted in the generic Islamic program.

The Court finds Defendants' interests compelling, and the policy of holding a unified Jumah service is the least restrictive means to satisfy those interests.   Plaintiffs' suggested alternatives to hold a Shiite service in a separate space are not feasible.   There is not the space, staffing, or resources to accommodate their request for a separate Friday prayer service. Accordingly, summary judgment is appropriate on this alternate basis as well.

3.    Constitutionality of RLUIPA

Because the Court has granted summary judgment to Defendants on the RLUIPA claim, it does not reach the constitutional issue. See Slack v. McDaniel, 529 U.S. 473, 485 (2000); Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring).

**D.    Free Exercise of Religion under the First and Fourteenth Amendments**

In previously addressing this claim, the Court perceived two potential violations: one based on the denial of a separate worship service, and one based on alleged discriminatory comments and conduct. The parties have expressed no opposition to this view of Plaintiffs' constitutional free exercise claim, and the Court will continue to view the claim in two parts.

1.    Separate Worship Service

Defendants Rashid, Goord, Umar, Khalifah, and Elmi were granted qualified immunity on Plaintiffs' claims arising from the denial of separate worship. The Court will extend this ruling to all Defendants because Plaintiffs still have not shown that the right to separate worship for Sunni and Shiite Muslims was clearly established at the time the lawsuits commenced. However, because Plaintiffs also seek declaratory and injunctive relief, the Court must proceed to the merits.

A court must balance "the constitutional protections afforded prison inmates, including the right to free exercise of religion" with "the interests of prison officials charged with complex duties arising from administration of the penal system." Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990). Accordingly, free exercise claims of prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged

infringements of fundamental constitutional rights." Farid v. Smith, 850 F.2d 917, 925 (2d Cir. 1988) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)).   On a constitutionally-based free exercise claim, the Court must assess "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." Id. at 926 (citations omitted).

      a.     Sincerely Held Belief

The sincerity analysis is required to distinguish "between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984).   Although the sincerity of Plaintiffs' belief in the necessity of having a separate Jumah service may be questioned because Plaintiffs' own testimony vacillates on the issue, the Court recognizes this issue is not appropriately decided on summary judgment because there are issues of fact.   The Court will therefore assume that the necessity of a separate prayer service is a sincerely held belief.

      b.     Infringement

As to the second element, Defendants contend that Plaintiffs have not shown the unified service to infringe on their religious belief.   This element may be analyzed similarly to the "substantial burden" test under RLUIPA. See Ford v. McGinnis, 352 F.3d 582, 591-92 (2d Cir. 2003) (applying the "substantial burden" test, but declining to explicitly decide whether it applies to free exercise claims).   As the Court has already found that the unified service does

not substantially burden Plaintiffs' religious exercise, summary judgment is granted on their First Amendment free exercise claim based on the denial of a separate worship service.

        c.      <u>Legitimate Penological Objectives</u>

The issue of whether the unified service furthers a legitimate penological objective offers an alternative ground for summary judgment. The test is whether Defendants' conduct was reasonably related to a legitimate penological interest. <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>Ford</u>, 352 F.3d at 594. In evaluating reasonableness in this context, the Court will consider:

> (1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

<u>Benjamin</u>, 905 F.2d at 574 (2d Cir. 1990) (citing <u>Turner</u>, 482 U.S. at 89-90). These considerations assure that a court gives proper deference to the decisions and judgment of prison officials, who are charged with the day-to-day operation of the prison. <u>O'Lone</u>, 482 U.S. at 349 (citations omitted).

Defendants cite security concerns, fiscal and staffing limitations, and space constraints for its policy of holding a unified Jumah service. These are legitimate concerns. <u>See</u> <u>id.</u> at 349, 352-53. The Court has already discussed in detail the difficulties with providing a separate Jumah service. Accordingly, the Court finds that Defendants have shown a rational relationship between the policy of a unified prayer service and legitimate government interests.

Turning to the factor of whether the inmates have alternative means to exercise their rights, Shiite inmates may either attend the congregate service or pray the Zohr prayer in their cells.    In addition, Shiite inmates are able to participate in other Shiite activities such as religious education classes and celebrations of religious holidays.    They may meet with the Shiite chaplain, and DOCS Directive 4202 allows inmates to receive spiritual advice from the non-prison Muslim community.    Shiite inmates are permitted to fast and break their fast when required by their religious beliefs.    Shiites are members of the facility majlis, which are the governing boards of the prisons' Muslim communities.    Such alternative means of religious expression support the reasonableness of the restriction at issue.    See id. at 351-52 (where inmates could participate in other religious exercises, finding adequate alternative means to attendance at the Jumah service).

As previously discussed, accommodating Plaintiffs' rights by providing a separate prayer service would have a serious impact on the prison system's financial, staffing, administrative, and physical resources.    Nonetheless, Plaintiffs argue that ready alternatives exist to accommodate their right while  satisfying DOCS's interests.    They suggest using multi-purpose or classroom space in the facilities, or using the current dedicated space in two shifts. However, the evidence from prison administrators reflects that there are no rooms available at the time of the Jumah service and that DOCS has a policy of keeping religious facilities separate from secular ones.    Moreover, Plaintiffs' suggested alternatives would not satisfy DOCS's fiscal and staffing interests.

14

Application of the Turner standards establishes that denying Plaintiffs a separate Shiite Jumah service is reasonably related to legitimate penological objectives. Consequently, Defendants are entitled to summary judgment on the First Amendment free exercise claim based on denial of a separate worship service on this alternate basis as well.

2.    Discriminatory Conduct and Comments

Defendant Goord was previously accorded qualified immunity on Plaintiffs' free exercise of religion claim based on alleged discriminatory conduct and comments. Defendants Umar, Rashid, Khalifah, and Elmi were denied qualified immunity on the claim because Plaintiffs had specific examples of discriminatory conduct by them. Moreover, the Court found that Plaintiffs raised a genuine issue of material fact about whether the alleged discriminatory conduct and comments by Defendants Umar, Rashid, Khalifah, and Elmi burdened Plaintiffs' free exercise of religion.

In keeping with the Court's earlier rulings, the Court will not extend the protection of qualified immunity to Defendants Ahmed and Al-Wahaidy. Plaintiffs' evidence shows that Defendant Al-Wahaidy, in his role as chaplain, refused to facilitate Shiite requests because he did not share their religious beliefs and told Shiite inmates that their religious beliefs were wrong. Plaintiffs also have evidence that Defendant Ahmed endorsed the distribution of anti-Shiite literature. This evidence is sufficient to preclude an award of qualified immunity to Defendants Al-Wahaidy and Ahmed. Similarly, as the Court has found with respect to Defendants Umar, Rashid, Khalifah, and Elmi, the record contains material factual disputes as

to whether the comments and conduct of Defendants Al-Wahaidy and Ahmed violated Plaintiffs' right to freely exercise their religion.

As to Defendants Leonard and LoConte, however, Plaintiffs have not shown any direct involvement in discriminatory conduct or comments by these Defendants. Accordingly, they are entitled to qualified immunity. Even though Defendants Goord, Leonard, and LoConte are qualifiedly immune, the Court must proceed to the merits of the claim because Plaintiffs seek declaratory and injunctive relief.

Plaintiffs have no evidence of personal involvement in discriminatory conduct or comments by Defendants Goord, Leonard, or LoConte.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Here, Plaintiffs contend that Defendants Goord, Leonard, and LoConte were aware of discrimination against Shiite inmates but failed to prevent or stop the discriminatory treatment. To establish this contention, they refer the Court to Exhibit 81 of Coleman's Declaration, which they describe as a collection of complaints, but in fact is a single memorandum written by Plaintiff Orafan to Defendant Goord regarding only the Jumah service. (Coleman Decl. Ex.

81.)   The memorandum contains no complaints of discriminatory conduct or comments.   (Id.)


Plaintiffs also cite to Defendant LoConte's deposition in which he testified that he did not fire any Muslim chaplains for discriminatory behavior.   (Coleman Decl. Ex. 6 at 138.) However, Defendant LoConte also testified that he addressed inmates' complaints, reprimanded chaplains, and investigated and removed offensive literature.   (Id. at 129-30, 132, 160-63.)   The fact that he never terminated a chaplain does not establish his personal involvement in the religious discrimination asserted by Plaintiffs, especially in light of other evidence that he acted on information indicating that unconstitutional acts might have been occurring.

Regarding Defendant Leonard, Plaintiffs refer the Court to his deposition in which he testified that he has never taken disciplinary action against a chaplain for disparaging a minority viewpoint.   (Coleman Decl. Ex. 27 at 51.)   This evidence far from establishes his personal involvement in a constitutional violation.   Plaintiffs do not refer to a specific complaint or grievance, or otherwise show that a chaplain actually disparaged a minority viewpoint. Moreover, when the deposition turned to specific instances, Defendant Leonard testified that he investigated a complaint against Defendant Elmi for distributing anti-Shiite literature and sent his representative to the facility to speak with the chaplain and the inmates.   (Id. at 52-53.) Similarly, when he received complaints about disparaging remarks in sermons or speeches, he responded to the inmate and sent a representative to the facility.   (Id. at 59.)

Plaintiffs have failed to show personal involvement in discriminatory conduct or comments by Defendants Goord, Leonard, or LoConte.   Accordingly, summary judgment is granted to them on this aspect of Plaintiffs' free exercise claim.

**E.      Conspiracy to Deny Civil Rights under 42 U.S.C. § 1985(3)**

Title 42 U.S.C. § 1985(3) provides:

> If two or more persons in any state . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiffs allege that a number of DOCS Sunni chaplains conspired with Defendants Umar, Ahmed, Rashid, Al-Wahaidy, Khalifah, and Elmi, as well as Dr. Taha Jabir Alalwani, who is not a defendant, to establish Sunni Islam as the official version of Islam and to deny Plaintiffs their rights to free exercise of religion and equal protection under the law.   Dr. Alalwani is the sole, non-DOCS, alleged co-conspirator.[6]   All of the other co-conspirators are DOCS officers or employees.

The Court finds Plaintiffs' § 1985(3) claim barred by the intracorporate conspiracy doctrine, which provides that "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together."   Quinn v. Nassau County Police Dep't, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999).   Dr. Alalwani cannot be considered a member of the alleged

---

[6]   The Consolidated Complaint does not actually claim that Dr. Alalwani was a member of the alleged conspiracy, as it avers only that he "materially assisted" the conspiracy. (Consol. Compl. ¶ 28.)

conspiracy because Plaintiffs have come forth with no facts tying him to a conspiracy to violate Plaintiffs' rights.   Indeed, in their Memorandum in Opposition, Plaintiffs refer in part to allegations in their Consolidated Complaint, which are insufficient to defeat a motion for summary judgment.   The sole facts identified by Plaintiffs are that Dr. Alalwani's organization agreed to fund educational programs for five chaplains and five inmates; the organization sent Defendant Ahmed to Saudi Arabia; and Dr. Alalwani opined that there were no fundamental differences between Shiite and Sunni Muslims so that they could pray together.   However, the educational programs were not restricted to Sunni Muslims and did not prohibit participation by Shiite Muslims.   Defendant Ahmed's trip was not to further Sunni Islam at DOCS.   Dr. Alalwani's opinion expressed no discriminatory or unequal views.   Furthermore, there is no evidence of even a tacit agreement by Dr. Alalwani to deprive Plaintiffs of their constitutional rights.   Accordingly, Plaintiffs' evidence is insufficient to establish Dr. Alalwani as a member of the alleged conspiracy under § 1985(3).

The only remaining alleged co-conspirators are DOCS officials and employees.   The intracorporate conspiracy doctrine applies to individual defendants of a correctional institution.   See Borrello v. N.Y. State Dep't. of Corr. Servs., No. 00-CV-177A, 2004 WL 2191565, at *2 (W.D.N.Y. Sept. 27, 2004).   At the time of the alleged actions, all Defendants were DOCS employees, and as such, were incapable of conspiring together as a matter of law.

An exception to the intracorporate conspiracy doctrine exists when individuals pursue "personal interests wholly separate and apart from the entity."   Bond v. Bd. of Educ., No. 97-

1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999).   However, Plaintiffs have made no allegation that Defendants were acting beyond the scope of their employment.   In fact, Plaintiffs specifically allege that Defendants acted through DOCS's policies, customs, and practices, and the "scope of employment" exception therefore does not apply.   See Powell v. Morris, 184 F.R.D. 591, 595 (S.D. Ohio 1998).   Defendants' Motions for Summary Judgment on this claim are granted.

**F.       Establishment of Religion Under the First and Fourteenth Amendments**

Plaintiffs allege that Defendants have established Sunni Islam as the official version of Islam within DOCS through policies, customs, and practices, in violation of the First and Fourteenth Amendments.   The Establishment Clause of the First Amendment prohibits any "law respecting an establishment of religion."   U.S. Const. Amend. I.   To survive an Establishment Clause claim, a government action must have a secular purpose, neither advance nor inhibit religion in effect, and must not promote "'an excessive government entanglement with religion.'"   Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971) (quoting Walz v. Tax Comm'n, 397 U.S. 664, 674 (1970)).   The entanglement question is considered with the effect inquiry. Agostini v. Felton, 521 U.S. 203, 232-233 (1997).   In a prison setting, a court must also consider the Turner factors and determine whether the infringing actions are reasonably related to legitimate penological interests.   Alexander v. Schenk, 118 F. Supp. 2d 298, 301 (N.D.N.Y. 2000); Warburton v. Underwood, 2 F. Supp. 2d 306, 316 (W.D.N.Y. 1998).

Plaintiffs argue that the purpose and effect of the Islamic program at DOCS is to advance Sunni Islam at the expense of Shiite Islam, primarily because of the authority granted

20

to Defendant Umar.   Defendant Umar, who was in charge of hiring DOCS chaplains and designing the Islamic program prior to his retirement in 2000, believes that Islam is one community and one religion.   Plaintiffs' expert opined that such a belief, denying differences between the Shiite and Sunni religions, "is an ideological statement embodying the pretensions of certain Sunnis to control the entirety of Islam." (Coleman Decl. Ex. 49 (Schwartz Dep.) at 4.)   Plaintiffs note that most of the DOCS chaplains are Sunni.   Plaintiffs also have evidence that Sunni inmates receive more religious benefits, including permission to observe religious holidays, greater access to educational classes and materials, and fundraisers.   Viewing the evidence in the light most favorable to   Plaintiffs, they have shown that DOCS's Islamic program has the effect of advancing the Sunni religion over the Shiite religion.

The Court has already applied the <u>Turner</u> factors to determine that the policy of having a congregate Jumah service is reasonably related to legitimate penological interests.   Now, the Court extends this ruling to the Islamic program in general.   First, Defendants' cited concerns of security, fiscal and staffing limitations, and space constraints apply to its policy of providing greater services for Sunni inmates.   In addition, the reality is that there are far more Sunni inmates than Shiite inmates, which Plaintiffs concede.   DOCS's policy is to have one staff chaplain for each 400 members of a faith group, which means there are more Sunni than Shiite chaplains.   There are only about 200 Shiite inmates in the New York prison system, for whom DOCS has provided one chaplain, in accordance with the established ratio.   Moreover, many of the Muslim chaplains do not classify themselves as either Sunni or Shiite, but state they belong to a unified Islamic faith.   Even so, the mere fact that the chaplain performing the

unified service is a Sunni Muslim is not a violation of the Establishment Clause.   See Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir. 1988) ("Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners might happen to subscribe, but may not discriminate against minority faiths except to the extent required by the exigencies of prison administration."); see also Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995) (upholding denial of a temporary restraining order based on the district court's finding that having a chaplain of a particular faith does not violate the Establishment Clause); Muhammad v. City of New York Dept. of Corr., 904 F. Supp. 161, 198 (W.D.N.Y. 1995). Providing more services to Sunni inmates is rationally related to legitimate government interests, especially considering that there are far more Sunni inmates than Shiites.

Second, Shiite inmates have alternative means of exercising their rights.   They may participate in Shiite religious education classes, pray in their cells, receive religious publications from friends and family, and celebrate Shiite holidays.[7]   Additionally, DOCS employs a full-time Shiite cleric for Shiite inmates' grievances and concerns.   DOCS's Protocol for Shiite Muslim Programs and Practices ("Protocol") permits Shiite prisoners to participate in Jumah services without discrimination, provides for Shiite educational classes,

---

[7]   Plaintiffs' evidence shows that in 2002, Id-Ul-Ghadeer Khum was not celebrated at the Auburn facility, and according to Plaintiff Amaker, neither Id-Ul-Ghadeer Khum nor Ashura is celebrated at Woodbourne.   However, the Court cannot conclude that this alternative means of expression was foreclosed to Plaintiffs merely because certain Shiite holidays were not formally celebrated on some occasions.

recognizes Shiite holidays, requires Shiite representation on facility Majlis, and provides for educational materials and books.[8]

Third, providing Plaintiffs with accommodations and services equal to those for Sunni inmates would have a significant burden on the prison system's financial, staffing, administrative, and physical resources. Finally, there are ready alternatives which both accommodate Plaintiffs' rights and satisfy DOCS's interests; indeed, these practices are currently in place.

DOCS's general Islamic policy, which has the effect of advancing the Sunni religion over the Shiite religion, is nevertheless reasonably related to legitimate penological interests. Accordingly, Defendants are entitled to summary judgment on the Establishment Clause claim.

**G.      Violation of Equal Protection as Provided by the Fourteenth Amendment**

Plaintiffs allege that Defendants provide them with substantially worse accommodations than other religious groups in violation of the Equal Protection Clause of the Fourteenth Amendment. Generally, prison officials need not provide identical facilities or personnel for every religious group. Beto v. Cruz, 405 U.S. 319, 322 n.2 (1972). However, prison officials must "treat similarly situated individuals alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).

---

[8]   On August 6, 2001, the DOCS issued the Protocol, which is specifically directed to the religious practices and programming for Shiite Muslim inmates. In relevant part, the protocol precludes DOCS employees from disparaging any religious faith, designates the Imam Al-Khoei Islamic Center as the official outside ecclesiastical authority for programming guidance, gives Shiite inmates the right to attend religious education and study classes specific to their faith, and affords a unified Jumah service at which Shiite chaplains may officiate. (LoConte Aff. Ex. K.)

Here, Plaintiffs contend that Defendants treat them differently than similarly situated religious groups and that the difference in treatment is not reasonably related to any penological interests. The alleged similarly situated religious groups are (1) Sunni Muslims, and (2) non-Muslim religious groups such as Seventh Day Adventists, Quakers, and Jehovah's Witnesses.

### 1.    Sunni Muslim Inmates

Plaintiffs claim they are not provided with prayer services and religious guidance equal to Sunni inmates. Plaintiffs note that Sunni chaplains lead Sunni inmates in prayer, and that Plaintiffs are not provided with any volunteer- or inmate-led prayer services. Plaintiffs also claim that Shiite holidays are not celebrated at all institutions, and that Shiites are prohibited from preparing special food and inviting family members, which Sunnis are permitted to do. Plaintiffs further show that Sunni inmates are offered more classes than Shiite inmates, and Shiite inmates are not granted money to buy books or permitted to have fundraisers, as are Shiite prisoners. Plaintiff Razi-Bey testified that only Sunni interpretations of Islam are available to him. The Court is satisfied that Shiite inmates are treated differently than Sunni inmates. However, as previously discussed in detail, Defendants have shown that both the unified Jumah service and DOCS' general Islamic program are reasonably related to legitimate penological interests. Accordingly, Plaintiffs' equal protection claim fails in this respect, and the Court will turn to the allegations concerning non-Muslim inmate groups.

### 2.    Non-Muslim Religious Groups

Plaintiffs argue that the Seventh Day Adventists, Quakers, Greek Orthodox, and Jehovah's Witnesses are afforded separate services, separate religious education classes, and special holiday observances.   As the Shiite inmates are provided with separate classes and holiday observances, the only real difference is the separate service.   Unlike the Shiite inmate group, however, DOCS does not employ any chaplains of these non-Muslim faiths.   Further, religious groups with similar beliefs, such as Greek Orthodox and Roman Catholics, worship together.   Nevertheless, the Court will consider these groups similarly situated to Plaintiffs, and finds that Plaintiffs have met their burden to show they are treated differently because they are not permitted a separate service.

Defendants must now demonstrate that DOCS's policy of providing separate services for  Seventh Day Adventists, Quakers, Greek Orthodox, and Jehovah's Witnesses, but not Shiite Muslims, is reasonably related to legitimate penological interests under Turner.   In addition to the numerous security, staffing, space, and financial constraints already described, Defendants argue that the nature of Islam distinguishes it from other faith groups in terms of the administrative burdens it creates.   For example, the availability of space is heavily burdened because the Jumah service must be at a certain time on Fridays.   On the other hand, Catholics can fulfill their weekly Mass requirement on Saturday afternoons or on Sundays.   Protestants may worship at any time on Sundays.   Holding simultaneous Jumah services also creates legitimate security concerns.   Additional groups of correctional officers would be required to escort and supervise inmates during the services.   Furthermore, because Jumah is on a Friday afternoon, scheduling is affected by other, non-religious, ongoing weekly programs.

On the other hand, there are fewer weekend services and programs, and thus, more staff is available to supervise. The Court finds a rational relationship between DOCS's actions and legitimate government interests.

The Court's previous findings about Plaintiffs' alternative means to exercise their rights, serious impacts on the prison system, and the lack of ready alternatives apply with equal force here. Plaintiffs have numerous alternative means to exercise their rights. They may attend a unified Jumah service or pray the Zohr prayer in their cells. They may participate in other Shiite activities such as religious education classes, holidays, fasting, and meeting with the Shiite chaplain. They may receive religious publications. Providing a separate prayer service would have a serious impact on the prison system, and there are no ready alternatives to accommodate Plaintiffs' request for a separate service while satisfying DOCS's interests. There are no rooms available at the time of the Jumah service, and DOCS's policy is to keep religious facilities separate from secular ones. Even so, these suggested alternatives do not meet DOCS's interests of staffing, fiscal, and security constraints.

Defendants have shown that DOCS's policy of providing a separate worship service for similarly situated, non-Muslim religious groups is reasonably related to legitimate penological interests. Defendants' Motion is accordingly granted on the entire Equal Protection Clause claim.

## H.    Free Exercise of Religion State Law Claims

Plaintiffs assert two causes of action under New York state law: a violation of free exercise of religion under the New York Constitution, Art. I, § 3; and a violation of free

exercise of religion under New York Corrections Law § 610 and DOCS Directives 4200, 4202, and 4750.  Plaintiffs concede that the Eleventh Amendment bars their state law claims against Defendants in their official capacities, and these claims are dismissed accordingly.

New York Corrections Law § 24 precludes pendent state law claims in federal court against officers and employees of DOCS who are sued in their personal capacities for employment-related activities.  See Ierardi v. Sisco, 119 F.3d 183, 186 (2d Cir. 1997) (citations omitted).  There is an exception for behavior committed outside the scope of one's duties.  Id. (where one DOCS employee sexually harassed another).  Defendants respond that their actions were undertaken in the scope of their employment, and thus, the exception does not apply.

In their Memorandum in Opposition, Plaintiffs direct the Court to Plaintiff Cook's statement that Defendant Elmi distributed anti-Shiite literature and offered to teach Plaintiff Cook "true Islam"; to Plaintiff Dennis's statement that Defendant Elmi denigrated him and the Shiite religion and distributed anti-Shiite literature; to Plaintiff Amaker's statement that Defendant El-Hassan announced in a Friday service that Plaintiff Amaker was dividing the Islamic community with his lawsuit; and to Plaintiff Orafan's statement that Defendant Khalifah said he did not want Shiites to lead the community.  Even viewing this evidence in the light most favorable to Plaintiffs, the Court finds that these statements were made in the discharge of Defendants' duties as chaplains, and hence, in the scope of their employment.  See Cancel v. Mazzuca, 205 F. Supp. 2d 128, 138-39 & n.12 (S.D.N.Y. 2002) (distinguishing Ierardi   from cases where an inmate alleges a DOCS employee violated his right to freely

27

exercise his religion, and finding inmate's state law claims barred by § 24).   Accordingly, Plaintiffs' state law claims are barred by § 24, and summary judgment is granted on the state law claims.

**I.      Remaining Issues**

The only claim remaining after application of the summary judgment standard is Plaintiffs' free exercise of religion claim based on alleged discriminatory conduct and comments, brought under the First Amendment of the United States Constitution, against Defendants Umar, Ahmed, Rashid, Al-Wahaidy, Khalifah, and Elmi. Therefore, the Court must address the following issues.

1.      <u>Injunctive Relief against Defendants Leonard, Al-Wahaidy, and Rashid</u>

Defendants Rashid and Al-Wahaidy argue that they do not currently work at DOCS, and injunctive relief therefore cannot be imposed against them.   The Court agrees, and Plaintiffs' requests for injunctive relief are dismissed as moot against Defendants Rashid and Al-Wahaidy.   Defendant Leonard's argument regarding the appropriateness of injunctive relief against him is moot given that all claims against him have been dismissed.

2.      <u>State Action Requirement</u>

The chaplain Defendants argue that they were not state actors when addressing theological questions, and thus, they are not liable under the constitutional and statutory authority relied on by Plaintiffs.   The Court agrees that Defendants cannot be liable for  actions undertaken in their purely ecclesiastical capacity such as interpreting and implementing religious doctrine during religious services or classes.   <u>See</u> <u>Montano</u>, 120 F.3d 844, 851 &

n.11 (8th Cir. 1997) ("At least insofar as matters of religious theory are implicated, . . . prison chaplains enjoy complete protection from the prospect of governmental intrusion"); see also Tripp v. Donovan, No. 97 CIV 4579 (RPP),1998 WL 338090, at *3 (S.D.N.Y. June 24, 1998) (finding that a cleric enforcing religious pedagogy is not a state actor).   However, chaplains may also be required to perform administrative and managerial tasks, and in doing so, they are state actors.  Monsanto, 120 F.3d at 851.

Defendants Rashid, Al-Wahaidy, Khalifah, and Elmi are granted summary judgment with respect to constitutional claims arising from their actions or conduct in a purely ecclesiastical capacity.   For example, when Defendant Al-Wahaidy allegedly told Plaintiff Razi-Bey that he would not assist in providing Shiite programs and services, he was acting in an administrative capacity and hence was a state actor.   On the other hand, Plaintiff Orafan's allegation that he was not permitted to lead a prayer in the Shiite manner during a prayer service is an example of a purely ecclesiastical decision.

3.      Eleventh Amendment Considerations

Defendants argue that the Eleventh Amendment precludes an award of monetary damages against them in their official capacities, and Judge Kahn has already so ruled in this case.

4.      Damages

Defendants cite certain testimony by Plaintiffs Orafan, Cook, and Razi-Bey, reflecting that these Plaintiffs are not seeking monetary damages from certain Defendants.   The Court declines to reach this issue on summary judgment, leaving it to counsel to decide what

damages to seek at trial.   Moreover, it is the province of the factfinder to determine the appropriate compensation for a constitutional violation, after considering all the evidence.

**CONCLUSION**

Defendants' Motions for Summary Judgment are granted on the following claims: (1) violation of the free exercise of religion as provided by RLUIPA; (2) violation of the free exercise of religion under the First and Fourteenth Amendments of the United States Constitution, based on denial of a separate worship service; (3) conspiracy to deny civil rights under 42 U.S.C. § 1985(3); (4) establishment of religion as prohibited by the First and Fourteenth Amendments of the United States Constitution; (5) violation of equal protection as provided by the Fourteenth Amendment of the United States Constitution; (6) violation of the right to free exercise of religion as provided by New York Constitution Art. I, § 3; and (7) violation of the right to free exercise of religion as provided by New York Correction Law § 610 and DOCS Directives 4200, 4202, and 4750.   Thus, the only claim remaining is for alleged violations of the free exercise of religion under the First and Fourteenth Amendments of the United States Constitution, based on alleged discriminatory conduct and comments, against Defendants Umar, Ahmed, Rashid, Al-Wahaidy, Khalifah, and Elmi.   This claim is limited in the following respects: (1) Plaintiffs may not seek monetary relief from Defendants in their official capacities; (2) injunctive relief is not available against Defendants Rashid and Al-Wahaidy; and (3) Defendants are not liable for actions undertaken in a purely ecclesiastical capacity.   Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.      Defendant Rahim is dismissed as a party under Federal Rule of Civil Procedure 25(a)(1);

2.      Defendants Goord, Leonard, Rashid, and Al-Wahaidy's Motion for Summary Judgment (Clerk Doc. No. 291) is **GRANTED** as to Counts 1, 3, 4, 5, 6, and 7, and **GRANTED in part and DENIED in part** as to Count 2;

3.      Defendants Ahmed, LoConte, Khalifah, and Elmi's Motion for Summary Judgment (Clerk Doc. No. 292) is **GRANTED** as to Counts 1, 3, 4, 5, 6, and 7, and **GRANTED in part and DENIED in part** as to Count 2;

4.      Defendants Goord, Leonard, and LoConte are **DISMISSED** as Defendants in this action;

5.      Plaintiffs' claims for monetary relief from Defendants in their official capacities are **DISMISSED**;

6.      Plaintiffs' claims for injunctive relief against Defendants Rashid and Al-Wahaidy are **DISMISSED**; and

7.      This case is set for trial on Monday, February 27, 2006, at 9:00 a.m., in Courtroom 5 of the James T. Foley United States Courthouse in Albany, New York.


Dated: January 17, 2006

                                         s/ Paul A. Magnuson
                                         Paul A. Magnuson
                                         United States District Court Judge